UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**BRANDON C. MCDUFFIE,**

        **Plaintiff,**

v.               Case No. 23-CV-214

**JAMES ELSINGER,** *et al.,*

        **Defendants.**

---

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

  Plaintiff Brandon C. McDuffie, who is incarcerated at Waupun Correctional Institution and representing himself, brings this lawsuit under 42 U.S.C. § 1983. McDuffie was allowed to proceed on an Eighth Amendment claim against defendant James Elsinger for alleged deliberate indifference towards McDuffie's medically necessary knee brace. He was also allowed to proceed on an Eighth Amendment deliberate indifference claim against defendants William Swiekatowski and Jean Lutsey[1] because, in their capacity as Special Needs Placement committee members, they denied his request for a knee brace despite knowing it was medically necessary.

  McDuffie was further allowed to proceed on an Eighth Amendment harassment claim against Elsinger because Elsinger harassed him by ordering that

---

[1] Jean Lutsey was removed from this lawsuit because she is deceased.

he be frequently strip searched. Finally, McDuffie was allowed to proceed on retaliation claims under the First Amendment against Elsinger and defendant Jeremy Josephs for allegedly issuing a conduct report against McDuffie and placing him in temporary lock-up because McDuffie complained about the harassing strip-searches and other conduct.

The defendants have filed a motion for partial summary judgment for failure to exhaust administrative remedies, asserting that McDuffie failed to properly exhaust all claims except for his Eighth Amendment deliberate indifference to medical needs claim against Elsinger. (ECF No. 23.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 20, 52.) The motion is fully briefed and ready for a decision.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the

2

nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v.*

3

*Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The Inmate Complaint Review System (ICRS) is the main process a Wisconsin inmate must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about and must be limited to one issue at a time. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, including if the inmate complaint contains more than one issue. Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the institution complaint examiner accepts the complaint, he makes a recommendation to the Reviewing Authority. Wis. Admin. Code § DOC 310.10(12).

"The Reviewing Authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the Reviewing Authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner. Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e). Appeals must also be "limited to the issue raised in the original complaint." Wis. Admin. Code § DOC 310.09(2)(g). If a prisoner does not receive a decision within 45 days after the date the institution complaint examiner acknowledged the inmate complaint, he may appeal to the Corrections Complaint Examiner. Wis. Admin. Code § DOC 310.11(3).

The Corrections Complaint Examiner then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The Corrections Complaint Examiner "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the Corrections Complaint Examiner's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the Corrections Complaint Examiner's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*McDuffie's Allegations*

When McDuffie was incarcerated at Green Bay Correctional Institution

5

(GBCI), he was prescribed a knee brace, which he had to wear under his pants because it did not fit over his pants. (ECF No. 1, ¶ 10.) When he walked through the metal detectors, the knee brace would set them off. (*Id.*) Around the middle of December 2018, McDuffie learned that Elsinger had a problem with McDuffie's knee brace and began requiring that McDuffie be strip-searched if he set off the metal detectors. (*Id.*, ¶¶ 17-19.) McDuffie states that he was strip-searched at least eight times a day between December 7, 2018, and January 22, 2019. (*Id.*)

On January 24, 2019, McDuffie protested to Josephs and Elsinger that they were harassing him when he went through the medical detectors, asking them why they were bothering him. (ECF No. 1, ¶¶ 28-29.) Elsinger allegedly replied that McDuffie was the one bothering him with his knee brace, so McDuffie told him he was going to sue him. (*Id.*, ¶¶ 30-36.) Two hours later, Elsinger placed McDuffie in temporary lock-up, and made him "give up" the knee brace. (*Id.*, ¶¶ 38-41.) Eventually Josephs wrote a conduct report concerning the January 24, 2019, incident with Elsinger, charging McDuffie with "threats, disruptive behavior, and disrespect." (*Id.*, ¶ 47.)

From January 24, 2019, through January 28, 2019, McDuffie was placed on observation status due to feeling depressed and angry. (ECF No. 1, ¶¶ 45-47.) While on observation status he was not allowed his knee brace. (*Id.*) On January 28, 2019, he wrote to the Health Services Unit (HSU) informing them he was off observation status and requesting his knee brace back. (*Id.*, ¶ 49.) HSU responded, informing McDuffie that his knee brace was "discontinued" because it was no longer necessary

6

as McDuffie could move and kneel without it. (*Id.*, ¶ 50; ECF No. 49, ¶ 11.) At some point after this (it is unclear from the record when), McDuffie filed a request with the Special Needs Placement committee, of which Swiekatowski was a member, requesting his knee brace back. (ECF No. 1, ¶ 55.) McDuffie did not get his knee brace back until after March 19, 2019, when he transferred to Waupun Correctional Institution. (*Id.*, ¶¶ 57-58.)

McDuffie was allowed to proceed on an Eighth Amendment claim against defendant Elsinger for alleged deliberate indifference toward McDuffie's medically necessary knee brace. He was also allowed to proceed on an Eighth Amendment deliberate indifference claim against Swiekatowski as SPN committee member because he denied or delayed McDuffie's request for a knee brace despite knowing it was medically necessary. McDuffie was further allowed to proceed on an Eighth Amendment claim against Elsinger because Elsinger harassed him by ordering him to be frequently strip searched. Finally, McDuffie was allowed to proceed on retaliation claims under the First Amendment against Elsinger and Josephs for allegedly issuing a conduct report against McDuffie and placing him in temporary lock-up (TLU) in retaliation for McDuffie complaining about the harassing strip-searches and other conduct.

*McDuffie's Attempts to Exhaust His Administrative Remedies*

It is undisputed that three inmate complaints are relevant: GBCI-2018-24880, GBCI-2019-1169, and GBCI-2019-2287.

GBCI-2018-24880 was received by the institution complaint examiner on December 4, 2018, in which McDuffie asserted that, while his new knee brace[2] was "approved by Madison" in September 2018, it had been three months and he still had not received it because of "security." (ECF No. 48-1 at 1-2.) The complaint was affirmed by the institution complaint examiner, noting that McDuffie needed the knee brace and that the wait had been too long but that there was no evidence of deliberate indifference to medical needs. (*Id.* at 4.) On December 20, 2018, McDuffie appealed the determination that there was no evidence of deliberate indifference, noting that, in addition to not receiving the new knee brace, he was also denied access to an MRI and a doctor. (*Id.* at 3.) The Corrections Complaint Examiner rejected the appeal because it was late, and the office of the secretary affirmed the rejection and dismissed the complaint. (*Id.* at 5.)

The institution complaint examiner received complaint GBCI-2019-1169 on January 16, 2019. (ECF No. 25, ¶ 5.) In it McDuffie complained that his new knee brace was being unfairly delayed because "security" was reviewing it, and the temporary one caused him to be subjected to strip searches because it set off the metal detectors. (ECF No. 26-2 at 7-8.) The institution complaint examiner recommended that McDuffie's complaint be dismissed because he would receive the brace once it was approved by security. (ECF No. 25, ¶ 7.) The Reviewing Authority accepted the institution complaint examiner's recommendation and dismissed the complaint on

---

[2] The "new" knee brace is different from the one that was setting off the metal detectors, which was supposed to be a temporary brace while McDuffie awaited the arrival of the new knee brace.

8

January 18, 2019. (*Id.*, ¶ 8.) The defendants state that McDuffie never appealed the Reviewing Authority's decision. (*Id.*, ¶ 9.) McDuffie asserts that he was never notified of the Reviewing Authority's decision, and after not hearing from the Reviewing Authority, on March 15, 2019, he placed his appeal in his cell door to be mailed. (ECF No. 49, ¶¶ 8-9.) The DOC has no record of receiving the appeal, and McDuffie does not have the carbon copy of the appeal. (ECF No. 50 at 2; ECF No. 49, ¶ 9.)

McDuffie asserts that, when he wrote both GBCI-2018-24880 and GBCI-2019-1169, he did not know the names of the people who were making the security decisions regarding his knee brace and only learned later that Swiekatowski was the security person responsible for the delay in receiving his new knee brace. (ECF No. 48, ¶ 6.)

The institution complaint examiner received GBCI-2019-2287 on February 1, 2019. (ECF No. 25, ¶ 10.) In it McDuffie asserted that the day before, January 30, 2019, he went to HSU to get his knee brace back and learned that it had been discontinued for no reason. (ECF No. 26-3 at 11.) He also states that he had been "harassed" by "security staff" because he was wearing a knee brace which kept setting off the metal detector. (*Id.* at 11-12.) After investigation, the institution complaint examiner determined that the knee brace was discontinued because medical staff found it was unnecessary as McDuffie was kneeling on his bad knee and could move "without limitation." (ECF No. 25, ¶ 12.) The institution complaint examiner recommended McDuffie's complaint be dismissed, and the Reviewing Authority dismissed the inmate complaint on February 7, 2019. (*ID.*, ¶¶ 12-13.)

9

McDuffie timely appealed the dismissal, stating that the brace was discontinued because he complained about staff strip-searching him. (ECF No. 26-3 at 14-16.) The Corrections Complaint Examiner reviewed the appeal and recommended dismissal, which the office of the Secretary accepted, dismissing the appeal on March 5, 2019. (ECF No. 25, ¶¶ 15-16.)

As mentioned above, McDuffie received a conduct report on January 24, 2019, from Josephs for his interaction with Elsinger at the metal detectors that day. (ECF No. 25, ¶¶ 17-20.) It is undisputed that McDuffie did not contest the conduct report and accepted an uncontested disposition of 90 days in segregation and 60 days of building confinement. (ECF No. 25, ¶ 21.) McDuffie did not appeal the disposition. (*Id.*, ¶ 22.) However, he asserts that he did not contest the conduct report because he was promised that, if he did not, it would be resolved fast and they would transfer him to Waupun. (ECF No. 48, ¶ 14.) He does not say who made him this promise.

*Analysis*

Claims against Josephs

McDuffie concedes that he did not exhaust his administrative remedies regarding any claim he has against Josephs. (ECF No. 47 at 3.) Therefore, summary judgment is granted in Josephs's favor and he is dismissed from the case.

Claims against Swiekatowski

There appears to be two separate issues regarding McDuffie not having access to a knee brace. The first issue concerns a new knee brace that would apparently fit over his clothes and not set off the metal detectors. The second issue is that, once

10

McDuffie was placed on observation status after being sent to TLU, his temporary knee brace (the one setting off the metal detectors) was confiscated and then ultimately his prescription for it was discontinued. Distinguishing between these issues is necessary to determine whether McDuffie exhausted his administrative remedies as to Swiekatowski.

McDuffie was allowed to proceed on an Eighth Amendment deliberate indifference claim against Swiekatowski for Swiekatowski denying McDuffie's request for the return of his temporary knee brace once it was confiscated on January 24, 2019, and discontinued. (*See* ECF No. 6 3-5.) He was not allowed to proceed on a claim against Swiekatowski for delaying the receipt of his new knee brace starting in September 2018, as neither his complaint nor the screening order makes mention of the delay of his new knee brace.

McDuffie argues that GBCI-2018-24880 shows he exhausted his administrative remedies against Swiekatowski. However, that inmate complaint concerns only the delay of receipt of his new knee brace starting in September 2018. It does not, and in fact could not, address his contention that Swiekatowski denied his temporary knee brace in January 2019, because it was filed before McDuffie's temporary knee brace was discontinued and before McDuffie wrote to the Special Needs Placement committee asking for the temporary knee brace to be reinstated. GBCI-2018-24880, then, does not demonstrate that McDuffie exhausted his administrative remedies as to his claim against Swiekatowski. Nor does it

11

demonstrate he exhausted his administrative remedies as to any other claims in this case.

Nor does GBCI-2019-1169 demonstrate that McDuffie exhausted his administrative remedies as to his claim against Swiekatowski. Again, in that complaint he complained that "security," which he understood later to be Swiekatowski and the Special Needs Placement committee, was unnecessarily delaying his new knee brace, not that they had denied his temporary knee brace.

GBCI-2019-2287 stated that McDuffie's temporary knee brace had been discontinued "by HSU staff" for "no reason". (ECF No. 26-2 at 11.) A prisoner is not required to state all the "facts, articulate legal theories, or demand particular relief" to exhaust his administrative remedies, and he also does not have to name each individual defendant, as long as "the grievance object[s] intelligibly to some asserted short coming." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002.) Originally, McDuffie was allowed to proceed on an Eighth Amendment deliberate indifference claim for the discontinuance of the knee brace against both Lutsey, who is HSU staff, and Swiekatowski, who by McDuffie's own admission is security staff. As noted above, Lutsey was dismissed from the case because she died, and McDuffie, though given an opportunity, did not name any replacement.

GBCI-2010-2287 clearly states that it was HSU Staff that denied McDuffie the knee brace in January 2019 and makes no mention of security staff or the Special Needs Placement committee playing a role. As such, no reasonable factfinder could conclude that it put GBCI on notice that Swiekatowski was responsible for denying

12

McDuffie's temporary knee brace in January 2019. *Schillinger v. Kiley*, 954 F.3d 990, 995-96 (7th Cir. 2020). McDuffie failed to exhaust his administrative remedies against Swiekatowski, and he is dismissed from the case.

<u>First Amendment Claim against Elsinger</u>

The defendants argue that McDuffie failed to exhaust his administrative remedies as to his First Amendment retaliation claim against Elsinger because he failed to contest the related conduct report. Prisoners can bring issues through the ICRS regarding a conduct report or disciplinary hearing only after first exhausting the disciplinary appeal process contained in Wis. Admin. Code. Chapter DOC 303. Wis. Admin. Code § DOC 310.06(2). To exhaust the disciplinary appeal process related to a conduct report of a contested major disposition, a prisoner must raise his grievance during the disciplinary hearing and again on appeal to the warden. Wis. Admin. Code § DOC 303.82(1). If a prisoner "wants to challenge the validity of a conduct report, he must do so through the disciplinary process rather than the ICRS." *Ravenwood-Alexander v. Beahm*, No. 17-cv-7-pp, 2018 WL 4188472 at *7 (E.D. Wis. Aug 31, 2018) (internal citations omitted).

It is undisputed that McDuffie did not contest his conduct report and did not pursue the process outlined in Wis. Admin. Code Chapter DOC 303. McDuffie states that he was promised that, if he did not contest the conduct report, the matter would be resolved quickly and he would be transferred to Waupun. In choosing to rely on this promise, McDuffie chose not to raise the fact that Elsinger had Josephs issue the conduct report in retaliation.

13

Short of demonstrating that the grievance process was unavailable, a prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). McDuffie's reason for choosing not to contest the conduct report does not demonstrate that the process was unavailable to him. Summary judgment on the retaliation claim is granted in Elsinger's favor.

<u>Eighth Amendment Harassment Claim Against Elsinger</u>

Both GBCI-2019-1169 and GBCI-2019-2287 address being harassed by security staff. GBCI-2019-1169 does not demonstrate that McDuffie exhausted his administrative remedies because he did not fully complete the exhaustion process for that grievance. The defendants assert that McDuffie did not appeal GBCI-2019-1169. McDuffie states that he never received a decision from the Reviewing Authority, so he appealed the grievance on March 15, 2019, by placing it in his cell door to be mailed. McDuffie argues that it then got lost through no fault of his own, so the process was made unavailable.

However, the DOC regulations clearly state that, if a prisoner does not receive a response from the Reviewing Authority within 45 days of the date the grievance was received by the inmate complaint examiner, the prisoner may appeal to the Corrections Complaint Examiner to exhaust his administrative remedies. GBCI-

14

2019-1169 was received by the inmate complaint examiner on January 16, 2019, which means McDuffie had until March 2, 2019, to appeal. Even taking the facts in the light most favorable to McDuffie, no reasonable factfinder could conclude that McDuffie timely appealed.

In GBCI-2019-2287, McDuffie did not assert that he was subjected to strip searches but did state that security staff harassed him. The appeal of GBCI-2019-2287 asserted that security staff strip searched him as a form of harassment. The appeal of the grievance provides more detail concerning the nature of the harassment to which McDuffie was subjected. Thus, the combination of the initial grievance and the appeal put GBCI on notice that McDuffie felt the strip searches were harassment.

While it is undisputed that McDuffie did not specifically name Elsinger as the perpetrator of the harassment, he did not need to do so to exhaust his administrate remedies so long as the "grievance objects intelligibly to some asserted shortcoming." *Dye v. Kingston*, 130 Fed. App'x 52, 55 (7th Cir. 2005) (listing cases stating that naming a potential defendant is not required if the grievance sufficiently put the institution on notice of a violation). Because GBCI-2019-2287 put GBCI on notice that McDuffie was being harassed by strip searches because of his knee brace, the court denies summary judgment on exhaustion grounds on the Eighth Amendment harassment claim.

15

## CONCLUSION

McDuffie failed to exhaust his administrative remedies as to all claims against Josephs and Swiekatowski. Summary judgment is granted in their favor, and they are dismissed because there are no remaining claims against them.

McDuffie also failed to exhaust his administrative remedies as to the First Amendment retaliation claim against Elsinger. Summary judgment on that claim is granted in Elsinger's favor, and the First Amendment retaliation claim is dismissed.

However, McDuffie exhausted his administrative remedies as to the Eighth Amendment harassment claim against Elsinger. Summary judgment on that claim is denied. Because both the Eighth Amendment harassment claim and the Eighth Amendment deliberate indifference claim against Elsinger survive, the court will issue an amended scheduling order at a later date.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment (ECF No.23) is **GRANTED in part and DENIED in part**. Summary judgment on exhaustion grounds as to the claims against Jeremy Josephs and William Swiekatowski is **GRANTED**. Josephs and Swiekatowski are **DISMISSED without prejudice**. Summary judgment on exhaustion grounds as to the First Amendment retaliation claim against Elsinger is **GRANTED** and the claim is **DISMISSED without prejudice** for failure to exhaust administrative remedies. Summary judgment as to the Eighth Amendment harassment claim against Elsinger is **DENIED**.

16

Dated at Milwaukee, Wisconsin this 2nd day of February, 2024.

                              BY THE COURT

                              *William E. Duffin*
                              WILLIAM E. DUFFIN
                              United States Magistrate Judge